


07/02/2008

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **JERRY D. SANFORD, JR.** | § | |
| **and ANDRA L. SANFORD** | § | Case No. 07-10581 |
| | § | |
| Debtors | § | Chapter 13 |

## MEMORANDUM OF DECISION

This matter came before the Court to consider confirmation of the Second Amended Chapter 13 Plan filed by the Debtors, Jerry D. Sanford, Jr. and Andra L. Sanford (the "Debtors"), and the objection thereto filed by the United States Internal Revenue Service (the "IRS"), in the above-referenced case. At the conclusion of the hearing, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[1]

## Background

The facts in this instance are simply stated. The IRS filed a proof of claim in this case in the total amount of $87,427.26, composed of a secured claim in the amount of $37,562.18 secured by a lien upon all of the Debtors' property,[2] an unsecured priority claim in the amount of $39,447.53, and a general unsecured claim in the amount of

[1] This Court has jurisdiction to consider confirmation of the plan pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (L), and (O).

[2] *See* 26 U.S.C. §6321.

$10,417.55.[3] In the Debtors' Second Amended Chapter 13 Plan now before the Court, the priority claim is specifically classified and addressed and the general unsecured claim will be paid pro rata with the other claims in that class. As for the secured claim, the Debtors simply list the claim in ¶ 12(B) [entitled "Other Direct Payments to Creditors"] with the generic remarks "IRS Secured Claim of $37,562." No particular payment scheme or applicable interest rate is specified. The IRS objected to the confirmation of the plan upon the ground that it could not be compelled to accept direct payments from the Debtor in lieu of payments distributed through the office of the Chapter 13 Trustee in satisfaction of its secured claim.[4] It characterized the proposed treatment as occurring "outside the plan" — a nomenclature which the Court noted at the hearing is repeatedly confused with proposed distributions which are made within the confines of a Chapter 13 plan, but with the debtor acting as disbursing agent for such distributions.[5] In the initial part of the hearing, the Debtors claimed the right to pay claims "outside the plan." Later

---

[3] Since the confirmation hearing, the IRS has amended the claim amount to $88,824.83 comprised of: (1) secured - $37,562.18; (2) priority - $39,196.57; and (3) general unsecured - $12,066.08.

[4] Other confirmation objections raised by the IRS and the Chapter 13 Trustee were resolved prior to the hearing.

[5] Though the terminology of paying a claim "outside the plan" arose from Chapter XIII under the Bankruptcy Act and technically became inapplicable upon the adoption of the Bankruptcy Code, it has survived 'lo these many years and serves little purpose these days other than to create confusion. As the Hon. Donald R. Sharp once observed:

> The phrase "outside the plan" is not a term of art and apparently means different things to different people and is used freely in bankruptcy court to mean different things at different times.

*In re Ford*, 179 B.R. 821, 823 (Bankr. E.D. Tex. 1995)

in the hearing, after the Court's observations, the Debtors recharacterized their proposal as a claim treatment occurring inside the plan for which they would serve as disbursing agents. The plan actually specifies neither. Though again not specified within the plan, the Debtors claimed that such treatment would allow the IRS to retain its lien and continue to accrue interest and penalties on its secured claim until paid. The IRS expressed no interest in such privileges. Though it did not dispute the Debtors' financial ability to make direct payments, the IRS articulated its desire to avoid any activity which might become necessary in the future to enforce the direct payment and asserted that it held rights under §1325(a)(5) to demand payment of its secured claim through the auspices of the Chapter 13 Trustee.

## Discussion

As an initial matter, the Court accepts the Debtors' abandonment of their initial characterization of these proposed payments as occurring "outside the plan." While it is possible for a debtor to exclude a claim from treatment in a Chapter 13 plan,[6] thereby creating the circumstance under which that claim would not be "provided for by the plan,"[7] such a proposal is rarely in the best interests of the debtor. By excluding a claim

---

[6] The only mandate in this area occurs under §1322(b)(2) which states that "[t]he plan shall — provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim."

[7] Section 1328(a) provides, in relevant part, that "the court shall grant the debtor a discharge of all debts provided for in the plan or disallowed under section 502 of this title. . . ." Thus, if a claim is not "provided for," it is not within the scope of any discharge which might ultimately be entered in that Chapter 13 case.

from plan treatment, a debtor is essentially issuing an open invitation to the holder of that claim to seek relief from the automatic stay in order to enforce that claim through any method authorized by applicable law.

Though the Debtors' counsel in this case made some passing references at the confirmation hearing about the accrual of penalties and interest in favor of the IRS as a result of the proposed treatment of the claim, which could characterize the effect of a treatment occurring outside a plan, this secured claim was identified within the plan and there was no indication that the Debtors were intending to abandon the protection of the automatic stay or were anticipating the immediate satisfaction of the IRS' secured claim through a foreclosure of the existing lien. Therefore, the Court concludes that, as the Debtors subsequently indicated at the hearing, this secured claim is "provided for" by the proposed plan, with the Debtors proposing to serve as the disbursing agents for such claim. Accordingly, the treatment of the secured claim within the confines of the proposed plan mandates that such treatment adhere to the requirements imposed by the Bankruptcy Code.

The IRS centers its objection on the selection of the disbursing agent. It claims that confirmation is precluded in this instance because the Debtors are required under 11 U.S.C. §1325(a)(5) to gain the IRS' acceptance of their proposal to act as the disbursing agent on the IRS' secured claim. Although, as discussed *infra*, the IRS is incorrect about the absolute necessity of its acceptance of that payment arrangement, it is correct that the

Debtors' failure to treat its secured claim properly under §1325(a)(5) mandates a denial of confirmation.

"[Section]1325(a)(5) essentially provides three options under which the proposed treatment of an allowed secured claim will be deemed appropriate for the purposes of confirmation: (1) by obtaining the acceptance of the treatment by the affected secured creditor; (2) by surrendering the collateral to the secured creditor; or (3) by providing for the retention of the existing lien by the creditor with "a promise of future property distributions (such as deferred cash payments) whose total value, as of the effective date of the plan, is not less than the allowed amount of the creditor's [secured] claim." *In re Allen,* 360 B.R. 216, 219-20 (Bankr. E.D. Tex. 2006), quoting *In re Robinson*, 338 B.R. 70, 73 (Bankr. W.D. Mo. 2006). [8]

---

[8] Section 1325(a)(5) specifically provides as a prerequisite to confirmation that "with respect to each allowed secured claim provided for by the plan —

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that–
(I) the holder of such claim retain the lien securing such claim until the earlier of–
(aa) the payment of the underlying debt determined under nonbankruptcy law; or
(bb) discharge under section 1328; and
(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

(iii) if–
(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

(C) the debtor surrenders the property securing such claim to such holder.

In applying those standards to the present case, the Debtors' proposed treatment of the IRS' secured claim is so deficient that it precludes much evaluation or discussion of its deficiencies. However, it is more than apparent that the Debtors have failed to demonstrate by a preponderance of the evidence that the proposed treatment meets the requirements of §1325(a)(5). The confirmation objection filed by the IRS evidences that it is not accepting the proposed treatment under subparagraph (A). Further, the Debtors are not offering to surrender the property to the IRS for the immediate satisfaction of its lien under subparagraph (C). The Debtors offer instead a murky, amorphous proposal for the treatment of the secured claim that does not identify a schedule for its satisfaction, does not specify the payment of interest as a component to ensure that the present value of the claim is paid, and does not specifically provide for the retention of the lien currently held by the IRS. Essentially, the Debtors are seeking to garage the claim until some unspecified future time while simultaneously frustrating the ability of the IRS to obtain payment of the indebtedness through the application of the automatic stay. That delaying tactic is precisely what §1325(a)(5) is designed to prevent. Regardless of the identity of the disbursing agent, in the absence of consent, surrender, or the invocation of the "cure and maintain" provisions of §1322(b), a Chapter 13 plan must present a proposal for the treatment of an allowed secured claim that fulfills the detailed requirements imposed by §1325(a)(5)(B).[9] Because the proposed treatment of the

[9] In the absence of an affirmative statement of acceptance by the affected creditor, a detailed plan proposal outlining the proposed treatment of a secured claim in compliance with the Bankruptcy Code is

allowed secured claim held by the IRS falls woefully short of meeting such standards, confirmation of the Debtors' Second Amended Chapter 13 plan must be denied.

Though confirmation must be denied due to the failure of the Debtors to demonstrate fulfillment of the confirmation standards imposed by §1325(a), the Court feels compelled to address the IRS' objection to the Debtors' proposal to serve as the dispersing agent on the IRS' secured claim under the plan.

Section 1326(c) of the Bankruptcy Code states: "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan."[10] Thus, while the Fifth Circuit quickly recognized after the adoption of the Bankruptcy Code that "Chapter 13 permits a debtor to act as disbursing agent, subject to the bankruptcy court's 'feasibility' determination under 11 U.S.C. §1325(a)(6)," *Foster v. Heitkamp (In re Foster)*, 670 F.2d 478, 486 (5th Cir. 1982), it acknowledged at that time that "§1326(b) also makes it clear that the Chapter 13 trustee is normally to make distributions to creditors of the payments made under the plan by the debtors." *Id*. It thus found in *Foster* that "the provisions of Chapter 13 make it clear that the designation of the debtor as such a disbursing agent is very much a matter left to the considered discretion of the bankruptcy court." *Id*. It confirmed that view fifteen years later in

---

necessary in order to trigger any implied acceptance of a proposed treatment which is inferred by the absence of any written objection to the confirmation of a Chapter 13 plan. *See generally In re Allen,* 360 B.R. at 221-22 and its discussion of implied acceptance.

[10] This subsection was not amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

*Mendoza v. Temple-Inland Mortgage Corp. (In re Mendoza)*, 111 F.3d 1264, 1269 (5th Cir. 1997) ["we believe that the bankruptcy court is in the better position to ascertain whether or not the debtor is capable of acting as a disbursing agent and make direct payments (to creditors)"]. This Court has previously ruled that "deviation from the normal periodic payments to the trustee and disbursal of those payments by the trustee should only be departed from when the debtor can demonstrate a significant reason for doing so." *In re Gregory*, 143 B.R. 424, 427 (Bankr. E.D. Tex. 1992)(Sharp, B.J., presiding).[11]

Whether the debtor is therefore allowed to act as a disbursing agent for the treatment of a particular claim in a Chapter 13 case is a matter resting within the sound discretion of this Court and, in the face of an objection, it is the duty of the debtor to establish sufficient cause for the application of that exception. In a decision to deny particular Chapter 13 debtors the authority to act as disbursing agents on their ongoing mortgage obligation, the United States Bankruptcy Court for the Southern District of Texas recently reviewed the jurisprudence in this area and identified twenty-one (21) factors that could have an impact upon whether a debtor should be allowed to act as a

---

[11] Actually considerable jurisprudence on this topic has arisen in this district. *See, e.g., First Bank & Trust v. Gross (In re Reid)*, 179 B.R. 504 (E.D. Tex.) [rejecting an agreement for direct payment between the debtor and the affected creditor and finding that avoidance of the payment of the Trustee's commission is a singularly insufficient reason to permit a debtor to act as disbursing agent], *aff'd without op.*, case no. 95-40429 (5th Cir. 1995) (per curiam) (Table decision at 77 F.3d 473); *In re Ford*, 179 B.R. 821, 823 (Bankr. E.D. Tex. 1995) [holding that modifications of allowed secured claims should generally be performed and paid through the auspices of the Chapter 13 Trustee].

disbursing agent on a claim addressed in a Chapter 13 plan:

> (1) the degree of responsibility of the debtor, as evidenced by his past dealings with creditors;
> (2) the reasons contributing to the debtor's need for filing a Chapter 13 petition and plan;[12]
> (3) any delays that the trustee might make in remitting the monthly payment to the targeted creditor;
> (4) whether the proposed plan modifies the debt;
> (5) the sophistication of the target creditor;
> (6) the ability and incentive of the target creditor to monitor payments;
> (7) whether the debt is a commercial or consumer debt;
> (8) the ability of the debtor to reorganize absent direct payments;
> (9) whether the payment can be delayed;
> (10) the number of payments proposed to pay the targeted claim;
> (11) whether a direct payment under the proposed plan will impair the trustee's ability to perform his standing trustee duties;
> (12) unique or special circumstances of a particular case;
> (13) the business acumen of the debtor;
> (14) the debtor's post-filing compliance with statutory and court-imposed duties;
> (15) the good faith of the debtor;
> (16) the plan treatment of each creditor to which a direct payment is proposed to be made;
> (17) the consent, or lack thereof, by the affected creditor to the proposed plan treatment;
> (18) the ability of the trustee and the court to monitor future direct payments;
> (19) the potential burden on the trustee;
> (20) the possible effect upon the trustee's salary or funding of the U.S. Trustee system; and
> (21) the potential for abuse of the bankruptcy system.

*In re Perez*, 339 B.R. 385, 409 (Bankr. S.D. Tex. 2006) (citations omitted), *aff'd, Perez v. Peake (In re Perez)*, 373 B.R. 468, 492 (S.D. Tex. 2007).

---

[12] The Fifth Circuit in *Foster* emphasized these first two factors. *Foster*, 670 F.2d at 487.

In the present case, the IRS vehemently objected to the Debtors' proposal to act as the disbursing agent on the treatment of its secured claim, and the Debtors provided absolutely no evidentiary justification for any deviation from the general rule that payment of a modified secured claim should proceed through the custody and control of the Chapter 13 Trustee. Though a creditor does not possess an absolute veto power against a debtor acting as the disbursing agent for its claim, its position on that issue is highly influential since an affected creditor generally has the right to enjoy the benefits and protections arising from the trustee's statutory duty to ensure that payments are made under the plan and otherwise to ensure that the plan is properly executed.[13] In the absence of any justification for the Debtors' proposal to act as a disbursing agent for that secured claim, the objection of the IRS on that point must be sustained.

Accordingly, confirmation of the Debtors' Second Amended Chapter 13 plan shall be denied. The Court had previously entered a final dismissal deadline to be triggered by the failure of the Debtors to achieve confirmation of the current plan.[14] However, in the belief that the Debtors can tender a confirmable plan to the Court without substantial

---

[13] *See generally* 1 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY ¶ 59.1 at p. 59-14 (3d ed. 2000 & Supp. 2004) [observing that "requiring . . . payments be made through the Chapter 13 trustee gives creditors information, control and leverage. . . .If all payments are made through the Chapter 13 trustee, the status of the case and of the debtor's post-confirmation financial condition is more easily determined."]. Of course, the cases in this area also express legitimate concern for the financial integrity of the Chapter 13 trustee program.

[14] See *Order Denying Confirmation of Chapter 13 Plan; Setting 30-Day Dismissal Deadline for Filing New Chapter 13 Plan; and Setting Final Dismissal Deadline Pertaining to Plan Confirmation* [dkt # 16] entered in this case.

delay, the Court finds that just cause exists for the revision of that final dismissal deadline as to these Debtors, with an increased penalty for any ultimate failure of the Debtors to propose a confirmable plan. Accordingly, the Debtors shall be permitted to file a new Chapter 13 plan within thirty (30) days and, in the event that the Debtors fail to do so, absent a further order of the Court extending such deadline for cause shown, or in the event that the Debtors thereafter fail to confirm such new Chapter 13 plan upon consideration by this Court under its normal procedures, this Chapter 13 case shall be dismissed, pursuant to §349(a) of the Bankruptcy Code, without further notice or hearing and with prejudice to the rights of the Debtors to file a subsequent petition under any chapter of Title 11, United States Code, for a period of one hundred eighty (180) days from the entry of the order of dismissal.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[15] pursuant to FED. R. CIV. P. 52, as incorporated into contested matters in bankruptcy cases by FED. R. BANKR. P. 7052 and 9014. A separate order shall be entered consistent with this opinion.

Signed on 07/02/2008

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

[15] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.